IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

YVONNE CARTER, LOUIS       )
D. FENNELL, and HAROLD D.  )
HORNSBY,                   )
                           )
          Plaintiffs,      )
                           )
vs.                        )          Case No. CIV-06-176-L
                           )
JUSTIN JONES, et al.,      )
                           )
          Defendants.      )

<u>REPORT AND RECOMMENDATION</u>

The Plaintiffs in this lawsuit are Louis D. Fennell and Harold D. Hornsby, who are state prisoners currently incarcerated in the Oklahoma State Penitentiary and Yvonne D. Carter, who is the mother of the Plaintiff Fennell.  Each Plaintiff appears pro se and they bring this action pursuant to 42 U.S.C. § 1983 alleging various violations of their constitutional rights.  Pursuant to an order by United States District Judge Tim Leonard, the matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).  Upon conducting an initial review of the complaint, the undersigned finds that the complaint should be dismissed upon filing.

In the complaint, Plaintiffs name thirteen individual Defendants: Justin Jones, Director of the Department of Corrections;  Mike Mullin, Warden, Oklahoma State Penitentiary; Jane Standifird, Deputy Warden, Oklahoma State Penitentiary; Chief Caywood, Chief of Security, Oklahoma State Penitentiary; Layne Davidson, Unit Manager of H-Unit, Oklahoma State Penitentiary; Harry Reeding, Case Manager Supervisor for the death row facility, Oklahoma State Penitentiary; Sherri Allen and Jimmy Wilson, case managers at Oklahoma State Penitentiary; Steve Moles, Unit Manager of the G/J unit,

Dick Connor Facility; Justin Smith and Fred Almaguer, employees of the Granite Correctional Facility; Anissa Green, a case manger at the Granite Correctional Facility; and David Dickerson, a case manager for the disciplinary unit at the Granite Correctional Facility.

Plaintiffs allege generally that a homosexual inmate was murdered at the Dick Connor Correctional Facility in 2003, after he had warned prison officials that he would be killed if he was sent to the G/J Unit. Complaint, p. 8. Plaintiff Hornsby alleges that he complained about the fact that prison officials had caused the death of the inmate by transferring him to the G/J Unit, ignoring the inmate's request for protection. Complaint, p. 9. Plaintiff Hornsby contends that on January 27, 2004, he was transferred to the G/J Unit, as a result of his complaints. Complaint, p. 9. He alleges that the decision to transfer him was made "behind closed doors." Complaint, p. 9. Plaintiff Hornsby asserts that he was retained in the G/J Unit until June 1, 2004, when he was returned to the general population. Complaint. p. 9. Plaintiff Hornsby alleges he was recommitted to the G/J Unit on July 27, 2004, where he stayed until April 8, 2005, the decision to transfer him there having been done "behind closed doors" Complaint, p. 9-10. Three days after his release to general population, Plaintiff Hornsby was recommitted to the G/J Unit, with the decision not only being made "behind closed doors," but also to ensure that he would be available on the G/J unit, so he could be implicated in an incident "scheduled by prison officials for April 24, 2005." Complaint, p. 10.

Plaintiff Hornsby was implicated in an assault and battery of an inmate on April 24, 2005. Complaint, p. 11. He alleges that the incident was orchestrated by prison

2

officials to ensure that he would be transferred to the underground death row facility at the Oklahoma State Penitentiary, and that he was convicted of the disciplinary offense despite the alleged victim's statement that he had not been assaulted by Plaintiff Hornsby.  Complaint, p. 10-11.  He contends that his transfer there was not undertaken in accordance with Department of Corrections policy.  Complaint, p. 10.  He further asserts that his retention in administrative segregation was improperly undertaken. Complaint, p. 25. Plaintiff Hornsby asserts that his First Amendment rights were violated when he was retaliated against by being placed in the G/J Unit at the Dick Connor Correctional Facility and by being transferred to Oklahoma State Penitentiary.  He further asserts that his Eighth Amendment rights have been violated, and that he has been denied due process and equal protection.

Plaintiff Fennell was incarcerated at the Granite Correctional Facility in April 2005 when he alleges that he was reassigned from a cell in the A pod to cell 5 in the C pod, which had not been cleaned before he was ordered to reside therein.  Complaint, p. 12. Plaintiff Fennell alleges that he informed the officer on duty that cell 5 had not been cleaned or inspected and he was told to remove the former occupants' property and place it into a trash bag.  Complaint, p. 12.   Plaintiff alleges that he informed this same officer that the panel for the window had been removed, and that she informed him that a work order had already been submitted to repair the window.  Complaint, p. 12.

On July 10, 2005, the 7:00 p.m lock down count was completed.  At 7:45 p.m., an altercation between African American inmates and white inmates occurred in the C yard. Complaint, p. 12-13.  Plaintiff Fennell alleges that he was not involved in the incident.

Complaint, p. 13.  Plaintiff, however, was charged in a July 12, 2005 misconduct with a class X violation, for possession of contraband, a knife made from the metal from the window of cell 5.  Complaint, p. 13.  Plaintiff was committed to disciplinary segregation at the time he was served with the misconduct.  Complaint, p. 14.  Plaintiff Fennell alleges that he was not provided the requisite due process in conjunction with the disciplinary proceedings that resulted in the conviction for this misconduct, including an assertion that the date of the hearing was changed so that it was held four days earlier than originally scheduled.  Complaint, p. 14-17.

Plaintiff Fennell received a second misconduct stemming from the July 10, 2005 altercation for group disruptive behavior, based on comments he allegedly made during the racial altercation.  Complaint, p. 14.  Plaintiff alleges that the hearing on the misconduct was rescheduled from August 12, 2005 to August 11, 2005, a decision made "behind closed doors."  Complaint, p. 15, 17.  Plaintiff Fennell further contends that his ability to appeal his disciplinary convictions was hampered by a shake down of the cells at Granite on August 24, 2005, when his legal papers were removed.  Complaint, p. 17-18.

Plaintiff Fennell contends that additional unwarranted misconducts were served on him on September 26, 2005, but no hearings were ever held.  Complaint, p. 18.  Plaintiff alleges that on this date Defendants Green and Dickerson used excessive force against him.  Complaint, p. 19.  He alleges that when his mother, Yvonne Carter, complained about the treatment that he was threatened and subjected to the filing of retaliatory misconduct charges.  Complaint, p. 19-21.  On November 4, 2005, Plaintiff

Fennell was moved to the Oklahoma State Penitentiary to the H Unit, which he alleges was in retaliation for his mother's complaints.  Complaint, p. 15, 21.  He asserts that this decision was made "behind closed doors" and without completion of the proper procedures.  Complaint, p. 22-24.

Plaintiff Fennell asserts that he was subjected to unconstitutional excessive force, that he was retaliated against for his mother's exercise of her First Amendment rights and for his own speech, that he has been subjected to cruel and unusual punishment in violation of the Eighth Amendment, and that his due process and equal protection rights have been violated.

Plaintiff Carter alleges that the Defendants violated her First Amendment rights by retaliating against her son after she complained about the treatment he was receiving at the Granite Correctional Facility.  She further alleges that Defendants inflicted emotional distress upon her by transferring her son and in their treatment of him.  The Plaintiffs seeks compensatory and punitive damages as well as injunctive relief.

## I.  SCREENING REQUIREMENT

28 U.S.C. § 1915A provides that "The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).  Because Plaintiffs' claims involve a civil action "brought with respect to prison conditions," screening is also necessary under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(c)(1).  Section 1997e(c)(1) provides:

> The court shall . . . dismiss any action brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action . . . fails to state a claim upon which relief can be granted . . . .

For the reasons set forth below, the undersigned recommends dismissal of the claims by Plaintiffs Hornsby and Fennell for failure to state a claim upon which relief can be granted. In particular, Plaintiffs have failed to show exhaustion of administrative remedies, which is an essential element of their § 1983 claims. Furthermore, the undersigned recommends that Plaintiff Carter's claims be dismissed, because it is apparent that she has not been retaliated against for the exercise of her First Amendment rights. Finally, the Court should decline to exercise jurisdiction over Plaintiff Carter's state law claims.

## II. EXHAUSTION OF ADMINISTRATIVE REMEDIES

As noted above, prior to initiating a civil action challenging the conditions of confinement, 42 U.S.C. § 1997e(a) requires that a prisoner first exhaust his administrative remedies. A plaintiff bears the burden of establishing that he has complied with the exhaustion requirement. Steele v. Federal Bureau of Prisons, 355 F.3d 1204, 1207-09 (10th Cir. 2003), cert. denied, 543 U.S. 925 (2004). In Steele, the Tenth Circuit Court of Appeals held that exhaustion of administrative remedies is an essential allegation of a prisoner's claim, as "it is the prisoner who can best assert the relationship between his administrative grievance and court filing." Id. at 1210. Accordingly, a "prisoner must: (1) plead his claims with 'a short and plain statement . . . showing that [he] is entitled to relief,' in compliance with Fed.R.Civ.P. 8(a)(2), and (2) 'attach[ ] a copy of the applicable

administrative dispositions to the complaint, or, in the absence of written documentation, describe with specificity the administrative proceeding and its outcome.'" Id. (citations omitted).  Furthermore, "a complaint 'that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted.'" Steele, 355 F.3d at 1210 (quoting Rivera v. Allin, 144 F.3d 719, 731 (11th Cir.1998)).

Even more recently, the Tenth Circuit has adopted the concept of total exhaustion in connection with the Prison Litigation Reform Act (PLRA) exhaustion requirement. With regard to this concept, the Court stated as follows:

> In the PLRA context, a total exhaustion rule would encourage prisoners to make full use of inmate grievance procedures and thus give prison officials the first opportunity to resolve prisoner complaints.  It would facilitate the creation of an administrative record that would ultimately assist federal courts in addressing the prisoner's claims. Moreover, it would relieve district courts of the duty to determine whether certain exhausted claims are severable from other unexhausted claims that they are required to dismiss. Prisoners suing under § 1983, no less than habeas petitioners, can be expected to adhere to this straightforward exhaustion requirement. Finally, the total exhaustion rule will not increase the burden on federal courts, but will instead tend to avoid at least some piecemeal litigation.

Ross v. County of Bernalillo, 365 F.3d 1181, 1190 (10th Cir. 2004) (citations omitted). Thus, the Court held that an action containing both exhausted and unexhausted claims is subject to dismissal: "We agree that the PLRA contains a total exhaustion requirement, and hold that the presence of unexhausted claims in [the plaintiff's] complaint required the district court to dismiss his action in its entirety without prejudice." Id. at 1189.

In response to the form complaint's questions regarding exhaustion, Plaintiffs Fennell and Hornsby state that they "have previously sought and are currently seeking

informal and formal relief from appropriate administrative officials . . . . The Administrative Grievance Process is rendered unavailable to Plaintiff Fennell and Hornsby for reason(s) that the Defendants either refuse to Respond to Request(s) to Staff(s) necessary to initiate Grievance process or return Request(s) to Staff(s) over ten (10) days after the date they sign the Request to Staff(s)." Complaint, p. 34. To the undersigned this assertion appears to be an attempt to avoid the exhaustion requirement by alleging that procedures are unavailable. This attempt, however, is unavailing in light of the provisions of the Oklahoma Department of Corrections' grievance policy regarding an inmate's rights in the event that staff members do not respond to administrative requests.

First, Plaintiffs do not allege any specific attempts on their part to grieve their issues. Although they contend that they submitted various request to staff forms, they do not provide copies to the Court for review, nor do they allege the dates on which the forms were filed, the dates on which they were returned, or what particular issues were grieved. Furthermore, Department of Corrections Policy OP-090124 provides that an inmate may file a grievance with the reviewing authority if there has been no response in 30 calendar days after submission of the request to staff. See Inmate/Offender Grievance Process, OP-090124 IV <http://www.doc.state.ok.us/offtech/op090124.htm> (accessed March 10, 2006). Neither Plaintiff Hornsby nor Fennell allege that he filed a grievance after having no response for thirty days to any specific request to staff form submitted.

Plaintiffs additionally assert that the staff members return request to staff forms ten days after they have been signed.  Although this statement is not entirely clear, the undersigned construes this statement as an allegation that the Plaintiffs believe they were unable to file grievances because by the time their requests to staff forms were returned, any grievance would be untimely.  Again, Plaintiffs do not provide copies of any request to staff forms that were returned in an untimely manner so as to support their theory that they could not pursue grievances.  Additionally, according to OP-090124INSERT, a grievance must be filed within fifteen calendar days of the date of the response to the Request to Staff form, and thus receiving a response ten days after it is signed will not preclude the filing of a grievance.  See Inmate/Offender Grievance Process, OP-090124 V <http: //www. doc. state.ok. us/offtech/op090124.htm> (accessed March 10, 2006).] Furthermore, OP-090124 also permits the reviewing authority to extend this period up to sixty days for good cause.  Id.  Neither Plaintiff Hornsby nor Plaintiff Fennell allege that they sought such an extension and that such request was denied.  In light of the provisions in OP-090124 and Plaintiffs' vague allegations about their exhaustion attempts, both past and present, the undersigned recommends that their claims be dismissed without prejudice.  Steele, 355 F.3d at 1213 ("A dismissal based on lack of exhaustion . . . should ordinarily be without prejudice."); Ross, 365 F.3d at 1190 (where a prisoner submits "a complaint containing one or more unexhausted claims, the district court ordinarily must dismiss the entire action without prejudice.").

This analysis does not apply to Ms. Carter's claims, because she is not incarcerated, and the Prison Litigation Reform Act applies only to claims filed by current

inmates.  See Norton v. City of Marietta, 432 F.3d 1145, 1150-51 (10th Cir. 2005).  Ms.

Carter alleges that after she complained about the treatment her son, Plaintiff Fennell,

was receiving, that he was subjected to retaliation.  The undersigned concludes that this

claim should be dismissed, because there is no basis for a 42 U.S.C. § 1983 claim on the

facts alleged by Ms. Carter, nor would amending her complaint remedy the deficiencies.

A district court may dismiss a claim sua sponte under Rule 12(b)(6) "when it is patently

obvious that the plaintiff could not prevail on the facts alleged, and allowing [her] an

opportunity to amend [her] complaint would be futile." McKinney v. Oklahoma Dep't of

Human Servs., 925 F.2d 363, 365 (10th Cir.1991) (internal quotation marks and citations

omitted).

　　　　To establish a claim that a public official retaliated against a private citizen in

violation of the First Amendment, Plaintiff Carter must allege:  (1) that she was engaged

in constitutionally protected activity; (2) that Defendants' actions caused her to suffer an

injury that would chill a person of ordinary firmness from continuing to engage in that

activity; and (3) that Defendants' adverse action was substantially motivated as a

response to Plaintiff's exercise of her First Amendment rights.  Worrell v. Henry, 219 F.3d

1197, 1212 (10th Cir. 2000).  Plaintiff Carter does not allege that she was subjected to any

retaliation or that she suffered any injury inflicted by the Defendants, rather she contends

that her son Plaintiff Fennell was.  Plaintiff Carter cannot seek to enforce her son's right

to be free from retaliation for her exercising her First Amendment rights, because 42

U.S.C. § 1983 provides a right of action that is personal to the victim.  Archuleta v.

McShan, 897 F.2d 495, 497 (10th Cir. 1990) (a § 1983 claim must be based upon the

violation of a plaintiff's personal rights, and not the rights of someone else). Accordingly, because Plaintiff Carter fails to allege sufficient facts to support a claim for retaliation against her for her exercising her First Amendment rights, the undersigned recommends that the Court sua sponte dismiss her claims.

Furthermore, the undersigned recommends that to the extent Plaintiff Carter attempts to raise state law claims, that those claims be dismissed pursuant to 28 U.S.C. § 1367(c)(3), which permits the district courts to decline supplemental jurisdiction over state law claims where "the district court has dismissed all claims over which it has original jurisdiction." See also, Tonkovich v. Kansas Bd. of Regents, 254 F.3d 941, 945 (10th Cir. 2001) (affirming dismissal of state law claims where plaintiff's § 1983 claims had all been dismissed and no other basis for federal court jurisdiction remained).

Because this case is subject to dismissal on filing, the undersigned recommends that the Plaintiffs' motion for preliminary injunction [Doc. No. 2] be denied as well. Finally, some of the Defendants have filed a motion to stay and a request for an order requiring a special report. [Doc. No. 18]. In light of the recommended disposition, it is recommended that this motion be denied as moot.

## RECOMMENDATION

For the reasons set forth above, it is recommended that the claims of Plaintiffs Fennell and Hornsby be dismissed without prejudice upon filing for failure to show exhaustion of administrative remedies. The undersigned further recommends that Plaintiff Carter's retaliation claim be dismissed for failure to state a claim, and that the Court decline to exercise supplement jurisdiction over her state law claims, if any are

11

raised.  Finally, the undersigned recommends that the Plaintiffs' motion for preliminary injunction [Doc. No. 2] be denied because the entire case is subject to dismissal, and that Defendants' motion to stay and request for an order requiring special report be denied as moot.  Plaintiffs are advised of their right to file individual objections to this Report and Recommendation with the Clerk of this Court by April 11, 2006, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1.  Plaintiffs are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein.  Moore v. United States, 950 F.2d 656 (10th Cir. 1991).  This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this 22nd day of March, 2006.


DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE